UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARIANNE FRY, ET AL

VERSUS

STATE OF LOUISIANA, ET AL

CIVIL ACTION

NO. 09-430-BAJ-SCR

CONSOLIDATED WITH:

NO. 09-481-BAJ-SCR

## RULINGS

These matters are before the Court on a motion for summary judgment, filed by plaintiffs, Marianne Fry, Janice Knox, Renella S. Kendall, Bobby J. Hooks, Johnnie M. Brown, Janester K. Anderson, Mavis L. Durr, Yvonne Asberry, Teri Nichols Barrow, Brownie Krispin Renfro, Iris Locure, and Aluska Francios (collectively, "Jetson Teachers") for summary judgment (doc. 23) and on a cross-motion for summary judgment, filed by defendants, State of Louisiana through the Department of Public Safety and Corrections, The State of Louisiana Office of Juvenile Justice, and Mary Livers, Deputy Secretary for the Office of Juvenile Justice (doc. 24). The parties have filed oppositions to the motions (docs. 25, 26) and replies to the oppositions (docs. 30, 31), and the Court has heard oral argument on the motions (doc. 33). Jurisdiction is based on 28 U.S.C. §1331.

## BACKGROUND

Plaintiffs in these consolidated cases, tenured teachers formerly employed by the Louisiana Department of Public Safety and Corrections ("La.DPSC"), assert

that their employment was terminated in violation of their due process rights under the Louisiana Constitution and the Constitution of the United States. Defendants argue that plaintiffs' jobs were eliminated by the legislature and that plaintiffs, therefore, were not entitled to due process grounded in tenure rights.

Pursuant to Local Rule 56.2, the following facts are undisputed for purposes of the pending motions for summary judgment.[1] In 2009, plaintiffs were employed by the State of Louisiana, Office of Juvenile Justice, as teachers, with tenure, at Jetson Correctional Center for Youth.[2] On June 30, 2008, Act 565 (S.B. 745) was approved and passed, creating LSA–R.S. §15:902.4, which provided in pertinent part, that "[b]y June 30, 2009, the Jetson Center for Youth-East Baton Rouge Parish Unit shall no longer be used as a juvenile facility." 2008 La. Sess. Law Serv. Act 565 (S.B. 749).[3] The statute was amended by the Louisiana Legislature in 2009, revising LSA–R.S. 15:902.4 to provide for "[c]onversion of Jetson Center for Youth-East Baton Rouge Parish Unit to a regional treatment facility for juveniles." 2009 La.

---

[1] *See,* Local Rule 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[2] *See,* doc. 23-1, ¶ & doc. 25-1; docs. 24-2 & 26-1, ¶ 1

[3] *See also,* docs. 24-2, 26-1, ¶ 2. It is undisputed that the phrase "Jetson Correctional Center for Youth" used by defendants in their statement of undisputed facts refers to the same facility that the legislature references in the statute as "Jetson Center for Youth-East Baton Rouge Parish Unit."

2

Sess. Law Serv. Act 253 (S.B. 302). The statute specifically provides, in pertinent part, that:

> By June 30, 2009, the Jetson Center for Youth-East Baton Rouge Parish Unit shall be converted to a regional treatment facility and renamed the Louis Jetson Center for Youth. The buildings of the Louis Jetson Center for Youth will be located together in a small area on the existing Jetson property. The facility shall have a design capacity aligned with national best practices. The design shall limit the dormitory capacity to twelve youths, and implement a therapeutic setting. The regional facility shall house not more than ninety-nine youths.
>
> * * *
>
> The comprehensive plan shall include strategies and activities to incorporate the following:
> (a) Use of standardized and validated assessment of youth risk need factors.
> (b) Use of treatment interventions that target known predictors of crime and recidivism to prepare for youth offenders for success in the community.
> (c) Use of evidence-based programs.
> (d) Staff development.
> (e) Family involvement.
> (f) Continuous quality improvement and evaluation of programs.
> (g) Staff-to-youth ratio in secure facilities with plans to achieve a staffing structure consistent with positive behavior treatment models.
> (h) Statistics of percentage of youth involved in fights in secure facilities with improvement plans.

LSA–R.S. §15:902.4 (2009 La. Sess. Law Serv. Act 253 (S.B. 302).[4]

None of the plaintiffs were removed from office for neglect of duty, incompetence, dishonesty, or violation of the rules and regulations governing

---

[4]See also, docs 24-2 & 26-1, ¶3.

employees.[5] Within the executive team, the legal department developed the Reduction-In-Force ("RIF") Policy itself with the help of the education department in making the new school as analogous with the Missouri Model (therapeutic model) of teaching as possible, in compliance with the statute.[6] On February 19, 2009, a copy of the RIF policy and a notice of the pending layoff or displacement were provided to all teachers at Jetson Correctional Center for Youth.[7]

## LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations,

---

[5] *See*, docs. 24-2 & 26-1, ¶5.

[6] *See, Id.*, at ¶6.

[7] *See, Id.*, at ¶8.

4

unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well established that the Teacher Tenure Law "was not intended 'to guarantee job security where there were no jobs.'" *Hayes v. Louisiana State Bd. Of Elementary and Secondary Education*, 39 So.3d. 818, 621 (La.App.1 Cir. 2010), *writ denied*, 46 So.3d 1272 (La.2010) (quoting *Rousselle v. Plaquemines Parish School Bd.*, 633 So.2d 1235, 1243 (La.1994).

Thus, the threshold question before the court is whether the jobs were eliminated by the legislature in passing LSA–R.S. 15:902.4.

> The paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. *Foti v. Holliday*, 09–0093, p. 6 (La.10/30/09), 27 So.3d 813, 817; *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07–2371, p. 13 (La.7/1/08), 998 So.2d 16, 27. It is well established that the starting point for the interpretation of any statute is the language of the statute itself. *Foti*, 09–0093 at p. 6, 27 So.3d at 817; *Dejoie v. Medley*, 08–2223, P. 6 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature's intent. *Foti*, 09–0093 at p. 6, 27 So.3d at 817; LSA–C.C. art. 9; LSA–R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform

> to the purpose of the law. LSA–C.C. art. 10.
>
> When analyzing legislative history, it is presumed the legislature's actions in crafting a law were knowing and intentional. *Foti*, 09–0093 at p. 6, 27 So.3d at 817; *M.J. Farms, Ltd.*, 07–2371 at pp. 13–14, 998 So.2d at 27. More particularly, the legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. *M.J. Farms, Ltd.*, 07–2371 at pp. 13–14, 998 So.2d at 27.

*Hayes*, 39 So.3d at 822-23.

As is noted *supra*, on June 30, 2008, the legislature created LSA–R.S. §15:902.4, which specifically provided, in pertinent part, that "[b]y June 30, 2009, the Jetson Center for Youth-East Baton Rouge Parish Unit shall no longer be used as a juvenile facility." The plain language of the statute at that point demonstrated the legislature's clear intent to close the facility and, therefore, to eliminate jobs that were performed at that facility.

Nothing in the 2009 amendment suggests that the legislature changed its intent. To the contrary, the plain language of the 2009 amendment demonstrates that, having chosen to close the former facility, the legislature created a new facility with a new name, a new mission, and a new focus. Counsel does not dispute that the legislature intended to close the facility, but argues that "[l]et's say a whole new Jetson is formed, which this legislation does; now I have some dispute as to whether it's an entirely new facility; they did change some of the courses, but the children are

6

still being taught English, Math, Social Studies, library, and some things like that . . ."[8]

Though counsel seems to believe that there is some genuine dispute of fact as to whether a new facility was created, it is well established that the interpretation of a statute is a question of law rather than a question of fact. See e.g., *Land v. Vidrine*, 62 So.3d 35 (La.2011); *T.B. ex rel. Debbra B. v. Bryan Independent School Dist.*, 628 F.3d 240 (5th Cir. 2011). Moreover, the clear and unambiguous language of the statute demonstrates that the Louisiana Legislature closed the Jetson Center for Youth-East Baton Rouge Parish Unit and created an entirely new entity, with a new name, and new mission, and a new focus.

Because the legislature, in enacting LSA-R.S. 15:902.4, eliminated the Jetson Center for Youth-East Baton Rouge Parish Unit, it also eliminated the jobs created for that facility. The fact that some of the former employees were hired to work at a new facility created by the legislature does not change the fact that the legislature eliminated the jobs formerly held by the plaintiffs in these actions. As is noted *supra*, tenure does not guarantee job security where there are no jobs.

For all of the foregoing reasons, the Court finds that no genuine dispute of fact exists and that summary judgment dismissing these matters is proper.

Accordingly, the motion by plaintiffs for summary judgment (doc. 23) is

---

[8]Recording of Motion Hearing, 9:48:36 a.m.- 9:48:52 a.m.

**DENIED**, and the motion by defendants for summary judgment (doc. 24) is **GRANTED**.

Judgment shall issue separately.

Baton Rouge, Louisiana, May 4, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA